There was evidence tending to show that at the time of the injury, and some time prior thereto, defendant was engaged in the business (286) of manufacturing, bottling and sale of a beverage called Coca-Cola, and other soft drinks; that plaintiff and a Mr. Mann were engaged in business and dealt in soft drinks, and from time to time bought quantities of these soft drinks of defendant, and resold same by retail to their customers.
E. M. Dail, plaintiff, speaking more directly to the occurrence, testified as follows: "I am plaintiff. Was injured on 27 June, 1907, in my store at Oriental. I and Mr. Mann were engaged in business and we dealt in soft drinks. I had no idea of any danger in handling the *Page 279 
bottles. A customer came in and wanted to purchase an article. In order to get to that article I had to remove a full box of Coca-Cola which I had purchased the week before from the defendant and had only opened that morning. I stooped over and took out two of the Coca-Cola bottles, and I stooped over to take hold of the third bottle, and as soon as I grasped the bottle and started to draw it out, it exploded and particles of the bottle struck me in the eye and destroyed the sight. The bottles were in a crate, crown end down. I bought the crate the week before (this was Monday), from the defendant."
Mark Hargett, a witness for plaintiff, testified as follows: "I know the plaintiff. I bought some Coca-Cola from him that was bottled by defendant, and carried it home, the latter part of the week before Mr. Dail got hurt. The defendant's name was on the bottle." Question: "What happened to any of the bottles?" Answer: "On the Saturday some customers came to my little store and wanted a drink of Coca-Cola. I took up a bottle and went to pull off the cap, and the neck of the bottle came off, and on Sunday I went to take out a bottle from the crate and it exploded and a piece of the glass cut my arm and a piece went through my shirt and stuck in my shoulder, and a piece struck a girl's shoe that was standing fifteen feet away, went through the shoe and cut her foot to the bone. I did not strike the bottle against anything nor shake it up. I just turned it over. When it was in the crate the small end was down."
C. S. Weslett testified: "I live in Bayboro. I have bought Coca-Cola in this town, in bottles which were made, Crown Bottling Works, Lee J. Taylor, all along for the last two years. Nothing happened to those I bought. But all along for the last two years I have seen those bottles explode in the store. I mean the Lee J. Taylor and Crown Bottling Works bottles. I examined the labels of one or two of those that I saw explode, and they had `Crown Bottling Works' and `Lee J. Taylor' marked on them. I don't call the pulling off a part of the mouth when opening a bottle an explosion. I don't remember more than but two of them exploding; that was during last year and this. One (287) was when I was taking a bottle from the ice box. The other one was an explosion by one in the crate."
At the close of plaintiff's evidence defendant moved to nonsuit, under the Hinsdale Act. Motion allowed, and plaintiff excepted and appealed.
After stating the case: The plaintiff in this case was the purchaser of the goods, or one of them, and therefore the many authorities *Page 280 
cited as to when and to what extent a vendor is responsible to third persons for negligent default in the sale of goods do not, in strictness, apply; and, there being no evidence tending to show a breach of warranty, express or implied, the appeal presents the question whether there is sufficient evidence of actionable negligence as between vendor and vendee to carry the case to the jury; that is, has there been legal evidence offered tending to show a breach of some legal duty on the part of defendant incident to the contract relation between them and not contained within the terms and stipulations of the agreement? Such breach of duty could be said to exist when a vendor sells goods having a latent defect of a kind likely to cause some physical injury to the vendee, and of which the vendor was aware or which he should have ascertained by proper care and attention (Wharton on Negligence, sec. 774; 29 Cyc., 430-431), and may be referred to the general principle announced in the notable case of Heavenv. Pender, 11 L. R. (1882-83), p. 503, where it was said that "Whenever one person is by circumstances placed in such a position towards another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct, with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."
Considering the case in this respect, it is very generally held that, in a claim of this character, a plaintiff is not required to establish his case by direct or positive proof, but the issue must be submitted to the jury whenever facts are shown forth in evidence from which a fair and reasonable inference of negligence may be made. Speaking to this question, in Shearman Redfield on Negligence, sec. 58, the authors say: "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless (288) the defendant produces evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default, but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence. As already stated, the plaintiff is not required to prove his case beyond a reasonable doubt, though the facts shown must be more consistent with the negligence of the defendant than the absence of it. It has never been suggested that evidence of negligence should be direct and positive. In the nature of the case, the plaintiff must labor under difficulties in proving the fact of negligence, and as that fact is always a relative one it is susceptible of proof by evidence of circumstances bearing more or less directly *Page 281 
on the fact of negligence — a kind of evidence which might not be satisfactory in other classes of cases open to clear proof. This is on the general principle of the law of evidence which holds that to be sufficient and satisfactory evidence which satisfies an unprejudiced mind."
This statement is cited with approval in the opinion of the Court inFitzgerald v. R. R., 141 N.C. 530-534, and in that case it was held as follows:
"2. Direct evidence of negligence is not required, but the same may be inferred from acts and attendant circumstances; and if the facts proved establish the more reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence."
There are instances where this requirement is met by simply proving the occurrence and the resultant injury, a doctrine which finds expression in the phrase, Res ipsa loquitur, and which has been considered and applied in several recent decisions of this Court, as in Fitzgerald's case, supra;Ross v. Cotton Mills, 140 N.C. 115; Stewart v. Carpet Co., 138 N.C. 60;Womble v. Grocery Co., 135 N.C. 474.
Plaintiff insists that these authorities apply in his favor here, and that he should have been allowed to go to the jury on proof of the occurrence and the injury, without more, but we do not think this position can be sustained. The principle only applies to cases where, on proof of the occurrence and the injury, the existence of negligent default is the more reasonable probability, and should not be allowed to prevail where, on proof of the occurrence, without more, the matter still rests only in conjecture. As said in Labatt on Master and Servant, sec. 843, quoted with approval in some of the cases referred to, "The rationale of the doctrine is that in some cases the very nature of the occurrence (289) may, of itself, and through the presumption it carries, supply the requisite proof; it is applicable when, under the circumstances shown, the accident presumably would not have happened if due care had been exercised. The essential import is that on the facts proved, the plaintiff has made out aprima facie case without direct proof of negligence."
While Coca-Cola seems to be a recognized article of merchandise, not usually or necessarily dangerous, under ordinary conditions, the evidence shows that it is put up in glass bottles, charged with gas to a pressure of not less than sixty pounds to the square inch, in this instance shipped in cases or crates for quite a distance and handled in various ways and by different parties; and the facts present a case where it would be entirely unsafe to permit the application of the principle contended for, or to hold that the explosion of one single bottle of such an article, under such circumstances, should of itself rise to the dignity of legal *Page 282 
evidence sufficient, without more, to carry a case to the jury. Glazer v.Seitz, 71 N.Y. Supp., 942.
While we hold this to be a correct position as to mere proof of the occurrence, we are of opinion that there was error in sustaining defendant's motion of nonsuit, for the reason that there was additional testimony tending to show a want of proper care on the part of the defendant. The witness Mark Hargett testified that he bought Coca-Cola of plaintiff, which was bottled by defendant, the latter part of the week before plaintiff received his hurt; on Saturday some customers came, and in taking a bottle out the neck came off, and on the following day (Sunday), in taking another bottle from a crate it exploded and a piece of glass cut witness's arm, another piece struck a little girl's shoe standing by, went through the shoe and cut her foot to the bone. Another witness, C. S. Weslett, testified "That all along for the last two years witness had seen these bottles from defendant's works explode in the store." True, the witness seems subsequently to have given evidence qualifying this statement, but we are not at liberty to select the more favorable portion of a witness's statement and act on it for defendant's benefit. In a motion of this kind we have repeatedly held that the evidence making for plaintiff's claim must be taken as true and interpreted in the light most favorable for him; and, applying this rule, we think the additional testimony indicated, with the evidence describing the occurrence, presents a case which requires that the issues raised should be submitted to the jury and that the order directing a nonsuit was erroneous.
There was testimony offered on the part of plaintiff purporting (290) to be expert evidence and tending to show additional circumstances indicating negligence on the part of defendant; but, as the court made no finding on the question of the witness being an expert, and the facts are not fully set out, we purposely refrain from expression on this question.
The order of nonsuit will be set aside and the cause restored to the docket for trial.
Reversed.
Cited: Turner v. Power Co., 154 N.C. 135, 137; Houston v. Traction Co.,155 N.C. 8; Hamilton v. Lumber, 156 N.C. 523; Dail v. Taylor, ibid., 589; Poe v. Telegraph Co., 160 N.C. 316; Beck v. Bank, 161 N.C. 206;Brown v. R. R., ibid., 579; Ridge v. R. R., 167 N.C. 521; Morgan v.Fraternal Asso., 170 N.C. 80; Bloxham v. Timber Corporation, 172 N.C. 44;Cashwell v. Bottling Works, 174 N.C. 325. *Page 283